Prentiss et als *v.* The Estate of Van Ness.

EDWARD H. PRENTISS, DAVID A. SMALLEY, LUCIUS B. PECK, ASAHEL PECK AND THE UNIVERSITY OF VERMONT, *Appellants,* *v.* THE ESTATE OF CORNELIUS P. VAN NESS.

*Settlement of Estates. Allowance and payment of foreign claims in cases of ancillary administration.*

In cases of ancillary administration granted in this State upon the estate of an insolvent deceased person, who died domiciled elsewhere, if it does not appear that he left property out of this State, non-resident creditors may prove their claims here, and share *pro rata* with domestic creditors in the distribution of his estate.

The proviso to the act of 1851,—acts of 1851, No. 20, p. 12*—does not contemplate a *general* reciprocity in the laws of another State, relating to the allowance of claims against insolvent deceased persons, but it only requires that so far as regards the property of the particular estate in question, found in such State, creditors resident in this State shall be placed upon the same footing as creditors residing there.

APPEAL from the decree of probate court. The case was tried upon the following agreed statement of facts :

Cornelius P. Van Ness died in Philadelphia on or about the 15th day of December, 1852, having his domicil, however, in Washington, in the District of Columbia. He left a will which was duly proved in the proper court in Washington, in January, 1853, and administration, with the will annexed, was taken out there. On the 31st of January, 1855, an ancillary administration was granted on his estate by the probate court for the District of Chittenden in this State, and commissioners were appointed to adjust and allow claims against his estate, who made their report to the probate court on the 20th of January, 1857.

---

* This statute and proviso are as follows :

" In case administration be taken in this State on the estate of any person who was at the time of his decease an inhabitant of another State, and who died insolvent, his estate found in this State shall, so far as practicable, be so disposed of that all his creditors, here and elsewhere, may receive each an equal share, in proportion to their respective debts.

*Provided,* that the benefit of this act shall not be extended to the creditors in any State, if the property of such deceased person, there found, shall not be equally appropriated to the creditors residing in this State, with other creditors, according to their respective debts."

The only claims allowed by the commissioners in addition to those of the plaintiffs, and one other resident of this State who did not appeal, were those of H. E. Berry, Francis A. Dickens and J. B. Monnot. Both at the time of the presentation of their claims before the commissioners, and at the date of the testator's death, the residence of the several claimants was as follows : the plaintiffs all resided in Vermont, while Berry and Dickens were residents of Washington, D. C., and Monnot of New York city.

The plaintiffs and the administrator objected before the commissioners to the allowance of the claims of the non-resident creditors, but the same were allowed, and the probate court decreed a distribution of the assets in the administrator's hands *pro rata* among all the creditors whose claims were allowed by the commissioners, and from this allowance by the commissioners, and such decree of the probate court, the plaintiffs appealed.

The testator's estate was insolvent, both in Vermont and in the District of Columbia. The assets in this State to be distributed among creditors, amounted to twenty-two hundred dollars, and consisted of the proceeds of the sale of an equity of redemption in certain real estate in Burlington, in this State, made under the order of the probate court in Chittenden county. The debts allowed to creditors residing in Vermont amounted to about fourteen hundred dollars, while the amount of the allowances to nonresident creditors was three thousand five hundred and twentynine dollars and seventy-seven cents.

The following statute of Maryland was in force in the District of Columbia at the time of the testator's decease, and has ever since been the law there :

" In paying the debts of the deceased, an executor or administrator shall observe the following rules : judgments and decrees against the deceased shall be wholly discharged before any part of other claims ; after such judgments and decrees shall be satisfied, all other just claims shall be admitted to a distribution on an equal footing without priority or preference ; if there be not sufficient to discharge all such judgments and decrees, a proportionate division or dividend shall be made between the judgment and decree creditors, but no executor or administrator shall be bound to discover what judgments or decrees have been passed

against the deceased, unless in the high court of chancery, or the general court of shore, or the court of the county where the deceased last resided."

The general statute of the State of New York in regard to the distribution of estates among creditors, in force at the time of the testator's death, and when the decree of the probate court was made in this case, was like the general statute of Vermont on that subject, as contained in the Compiled Statutes, before any alteration in the law was made by the statute of 1851. (Laws of 1851, No. 20, p. 12). But neither in the State of New York, nor in the District of Columbia, is there any statute on the subject of distribution in cases of ancillary administration.

Upon these facts, the county court, at the November Term, 1857,—BENNETT, J., presiding,—rendered judgment *pro forma*, affirming the decree of distribution of the probate court, to which the plaintiffs excepted.

*Wm. G. Shaw* and *Asahel Peck*, for the plaintiffs.

1. Previous to the passage of the act of 1851, page 13, laws of 1851, the law was well settled in Vermont that in ancillary administrations the commissioners had no jurisdiction of any other claims than those of resident creditors, and that foreign creditors could not receive any dividend under such administration. *Churchill* v. *Boyden*, 17 Vt. 319 ; *Hunt* v. *Fay*, 7 Vt. 170 ; *Eames* v. *Creditors of Eames*, 4 Vt. 263 ; *Vaughan* v. *Barrett*, 5 Vt. 333 ; *Porter's Heirs* v. *Heydock*, 6 Vt. 374.

2. The statute of 1851 is a proposition on the part of Vermont to alter the exclusiveness of the settled law in cases of ancillary administration, and to extend the benefit of an equal distribution of the property, found here, to the citizens of any other State, which in *similar circumstances* will do the same by our citizens.

In other words, it is a proposition for a reciprocity treaty on the subject of the distribution of the property of certain deceased persons among creditors ; and it must be accepted by New York, and the District of Columbia, before the act will take effect upon the claims of creditors residing within those jurisdictions. The act only applies to creditors, citizens of a State, by whose laws

it appears that, in the case of an ancillary administration in such State, foreign creditors are permitted to share equally with domestic creditors in the assets under such ancillary administration, according to the amount of their respective claims ; that is, where it appears, that had the principal administration been *here*, and the ancillary administration *there*, creditors in this State would have shared equally with creditors there, under such ancillary administration according to the amount of their respective debts.

In the case at bar it is plain that such is not the case either in New York or the District of Columbia, because neither of those jurisdictions have any other than a *general* statute regulating the payment of debts of deceased persons. We have a similar statute in Vermont, providing in general terms for equal payment of all debts *pro rata ;* but our courts have expressly held that this general act did not apply to ancillary administrations.

If a special statute is necessary in Vermont to reach the case of ancillary administrations, is not a similar one equally requisite in New York and the District of Columbia ?

3. But if another and more narrow construction of the meaning of the proviso to the act of 1851 is adopted, viz : that it only requires that the property of the *particular deceased person in question* in other jurisdictions shall there be applied to the payment of all his debts equally, even then the claims of the foreign creditors in this case can not be allowed or paid through our probate court.

Not the New York claim ; because the property of Mr. Van Ness in New York, if distributed among creditors at all by the courts of that State, must be distributed through an ancillary administration, and we have already shown that the common law has not been so altered in New York by any special statute, as to allow an equal distribution of property, found there, among all creditors under an ancillary administration.

Not the claims from the District of Columbia ; because the law of Maryland, in force there, recognizes a " fanciful preference" of judgment over simple contract debts, which is unknown to our laws, and which entirely prevents such an appropriation of the deceased's property there, as under Vermont interpretation and Vermont law can be called an " equal distribution so that all

his creditors, here and elsewhere, may receive each an equal share in proportion to their respective debts." The words " in proportion to their respective debts" mean in proportion to the *amount* of their respective debts, without regard to any " fanciful preferences" founded on the character of the debt or the proof by which it is to be established.

*Daniel Roberts* and *L. E. Chittenden*, for the defendant.

1. The statute of 1851 has abolished all right or claim of preference in behalf of resident creditors, and insists only upon equality with the foreign creditor.

The *proviso* is designed merely for self-protection, in case this equal right may have been invaded in the other State. This *proviso* makes no reference, in terms, to the law of the foreign State, as furnishing a rule for administration in this State, but rather to the facts attending the foreign administration. The question under the *proviso* is, has the foreign creditor in *fact* secured a preference under the foreign administration over our own citizens; or, is the foreign law such that he must in fact secure such preference, in the particular case ? If equality has been secured under the foreign law in the particular case, why need we speculate as to what might have occurred under the law in some other case ?

Thus the statute has framed into a law those obligations of natural equity, which are set forth by REDFIELD, Ch. J., in *Churchill et al.* v. *Boyden*; MATTOCKS, J., in *Hunt* v. *Fay, Adm.*, 7 Vt. 189–90.

2. In this case, the equality demanded by the statute has been in fact, secured. 1st, it does not appear that the testator left any estate whatever in the State of his domicil. The case states that it was insolvent there. It does not appear that there are any creditors of the estate, except those whose claims were allowed here. It is not claimed against the New York creditor, that there was any administration taken in that State or any estate there to be administered upon. If there be no estate except within this jurisdiction, then full and final equality has been attained by the distribution made in this case, and could not have been secured otherwise. 2d, if, by supposition, there was or is any estate in

the District of Columbia to be administered upon, then these Vermont creditors are " *entitled* to have their claims allowed there, and to share ratably in the assets" with the creditors in that jurisdiction. (*Churchill et al.* v. *Boyden ;*) and this again secures an equality; and in either case, the condition of the *proviso* is answered.

3. But if by the *proviso* is intended, that we are to regard the provisions of the foreign law, rather than the fact of equality of creditors in the particular case, (a forced and insensible construction,) then the case is with us, for the law of the District of Columbia makes no distinction between the domestic and foreign creditor.

4. Aside from the statute of 1851, the decree in this case was in accordance with the rules laid down in *Churchill et al.* v. *Boyden*, and within the discretion of the probate court to make, and was equitably and wisely made.

REDFIELD, Ch. J.   The only question finally insisted upon by the counsel in this case is in regard to the construction of the statute of 1851, in relation to the distribution of estates where there are administrations in different jurisdictions.

The first section of that act applies in terms to cases where the deceased was domiciled abroad, and where by consequence the administration here is secondary or subordinate.   It provides generally, that the property in this State "shall, as far as practicable, be so disposed of that all his creditors here and elsewhere, may receive each an equal share, in proportion to their respective debts."   If this were all the provision of the statute upon the subject, there could be no question whatever that foreign and domestic creditors were placed upon the same footing.

But some uncertainty arises in regard to the proper construction of the proviso to this statute : "That the benefit of the act shall not be extended to the creditors in any State, if the property of such deceased person, *there found*, shall not be equally appropriated to the creditors residing in this state, with other creditors," etc.   This we think has no reference to a general reciprocity in the laws of such State upon this subject, but only to reciprocity in regard to those laws, in the distribution of prop-

erty belonging to the same estate and found in such State. And this reciprocity extends only to placing creditors in this State upon the same footing as their own citizens.

Now in the present case there is nothing to show that there is property belonging to this estate, either in New York or in the District of Columbia, and if not, it seems to us the proviso in the statute has no application, as the other creditors, whose claims are allowed here, reside in that State and District. And when there is such property found in that District or State, it will not apply if the laws of such State or District, where the same is found, are reciprocal as to our citizens, in the distribution of such property.

The office of this proviso seems to us to be to guard against the general provision of the act op rating unjustly upon our own citizens, in consequence of foreign creditors being entitled to an advantage over them, in their own jurisdiction, in regard to property there existing. As no such property is shown to exist, in either of the jurisdictions where these foreign creditors reside, the proviso will not apply to this case, and these creditors, under the general provisions of our statute in the enacting clause, were entitled to an equal share in the estate with the resident creditors, which was decreed by the probate court, and the judgment of the county court affirming that decree, is affirmed, and is to be certified to the probate court.

BARRETT, J., dissented.